**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3630-19

MICHAEL KARLIS,

     Plaintiff-Appellant,

v.

NORMAN-SPENCER AGENCY,
INC., NU HOLDINGS, INC.,
BRIAN NORMAN, and
CHRISTOPHER NORMAN,

     Defendants-Respondents.

_____

        Argued October 14, 2021 – Decided October 29, 2021

        Before Judges Haas and Mitterhoff.

        On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0987-19.

        Erik Frins argued the cause for the appellant (Simon Law Group, attorneys; Erik Frins and Britt J. Simon, on the briefs).

        Christopher M. Curci argued the cause for respondent (Ward Law, LLC, attorneys; Jennifer L. Ward and Christopher M. Curci, on the brief).

PER CURIAM

In this contract dispute, plaintiff Michael Karlis appeals from an April 17, 2020 order denying his motion for reconsideration of the court's January 24, 2020 order granting summary judgment in favor of defendants Norman-Spencer Agency, Inc., NU Holdings Inc., Brian Norman, and Christopher Norman.[1] Plaintiff argues the motion judge erred in granting summary judgment to defendants by failing to give effect to the plain language and structure of his employment contract and by failing to consider extrinsic evidence supporting his interpretation of the contract. We affirm, substantially for the reasons set forth in Judge Robert G. Wilson's well-reasoned opinion. We add only the following brief remarks.

Plaintiff, a licensed attorney in the State of New Jersey, owned and operated an insurance management business called Northern Star Management (Northern Star). Defendants provide property and casualty insurance. In August 2014, defendants purchased Northern Star from plaintiff. In connection with the contract of sale, plaintiff entered into a July 31, 2014 employment agreement[2]

---

[1] The contract at issue involved plaintiff and defendant Norman-Spencer Agency, Inc. The rest of the named defendants were not parties to the contract.

[2] The entire Employment Agreement consisted of multiple agreements governing employment, confidential information, and invention assignment.

(Employment Agreement) with defendant Norman-Spencer Agency, Inc. The Employment Agreement provided that plaintiff would serve as: a) Managing Director of defendant's Personal and Commercial Boater Safety Associations; b) Managing Director of the defendant's Risk Purchase Groups, including but not limited to Norman-Spencer Real Estate Risk Purchasing Group and Norman-Spencer Crane and Boom Truck Risk Purchasing Group; and c) Senior Counsel. The agreement set plaintiff's annual salary at $200,000 in year one, $210,000 in year two, $220,500 in year three; and at least $231,525 in year four and thereafter.

The effective date of the Employment Agreement was July 31, 2014. Section one divided plaintiff's term with the company into an initial period of forty-eight months (Initial Term Period), and a subsequent period during which plaintiff would become an at-will employee (At-Will Period). Section one states:

> (a) *Initial Term Period.* Subject to the provisions for termination as hereinafter provided, the term of this Agreement shall be from the Effective Date and continuing for forty[-]eight (48) months ("Initial Term Period"). Upon the expiration of the Initial Term Period, Employee will become an "At-Will Employee" as provided for under section 1.(b) below. The terms and conditions set forth in the Agreement will survive the expiration of the Initial Term Period and continue until termination of Employee's employment with

3

Company. The period from the date hereof until termination of the Employee's employment with Company is referred to herein as the "Term"[].

(b) *At-Will Employment*. **EMPLOYEE UNDERSTANDS AND ACKNOWLEDGES THAT EMPLOYEE'S EMPLOYMENT WITH COMPANY FOLLOWING THE INITIAL TERM PERIOD IS FOR AN UNSPECIFIED DURATION AND CONSTITUTES "AT-WILL" EMPLOYMENT. EMPLOYEE ACKNOWLEDGES THAT THE EMPLOYMENT RELATIONSHIP MAY BE TERMINATED AT ANY TIME, WITH OR WITHOUT CAUSE AND FOR ANY OR NO CAUSE, AT THE OPTION EITHER OF COMPANY OR EMPLOYEE, WITH OR WITHOUT NOTICE, EXCEPT THAT ANY TERMINATION BY THE COMPANY WIHOUT CAUSE SHALL BE WITH AT LEAST SIX (6) MONTHS NOTICE. EMPLOYEE ALSO UNDERSTANDS THAT ANY REPRESENTATION TO THE CONTRARY, EXPRESS OR IMPLIED, IS UNAUTHORIZED AND NOT VALID UNLESS OBTAINED IN WRITING AND SIGNED AND DATED BY THE DULY ELECTED PRESIDENT OF THE COMPANY. NEITHER THIS AGREEMENT NOR ANY CHANGES IN EMPLOYEE'S DUTIES, POSITION, TITLE, COMPENSATION OR OTHER CONDITIONS OF EMPLOYMENT DURING HIS/HER EMPLOYMENT WITH COMPANY SHALL ALTER THE FOREGOING.**

On January 29, 2018, defendant sent plaintiff a letter providing notice of its intent to terminate plaintiff effective July 31, 2018, at the end of the Initial

4

Term.  January 29, 2018 was more than six months before the expiration of the Initial Term.  Defendant sent the termination notice by email and certified mail.

On July 31, 2018, plaintiff sent an email to Pat Malone, defendant's Chief Financial Officer, and Brian Norman, defendant's Chief Executive Officer and stated:

> I spoke with Pat a few minutes ago.  Pat advised me that it was the position of the company that my employment[] ends today.  I disagreed with Pat, however, to keep the peace in the office, I agreed not to come into the office.
> I will work from home and be available for work.
>
> Again, based upon our agreements, I do not agree that my employment ends today with Norman-Spencer.

Plaintiff's brother, George Karlis,[3] was also employed by defendant.  The parties dispute whether the employment agreements signed by plaintiff and his brother were identical; however, defendant terminated George in November 2018, via a separation agreement.

On July 26, 2019, plaintiff filed a complaint against defendants alleging: breach of contract (count one); breach of implied covenant of good faith and fair dealing (count two); fraud (count three); negligent misrepresentation (count

---

[3]  As plaintiff and his brother share the same last name, we refer to George Karlis as "George."  We intend no disrespect.

A-3630-19

four); negligence (count five); gross negligence (count six); civil conspiracy (count seven); bad faith (count eight). All eight counts were filed against each of the named defendants. Defendants filed an answer on September 3, 2019.

On December 23, 2019, defendants filed a motion for summary judgment. Plaintiff filed opposition and a cross-motion for partial summary judgment. On January 24, 2020, after oral argument, Judge Wilson issued an oral decision granting defendants' motion for summary judgment. Judge Wilson explained:

> I agree that [p]laintiff's argument is that [d]efendants could not provide [p]laintiff with a six-month notice of termination during the at-will employment phase until after the at-will employment phase began.
>
> I agree with [d]efendants that if the court were to accept that argument, doing so would result in the court transforming the 48-month contract term into a 54-month contract term. And I do agree [that is] contrary to the language of the agreement.
>
> I agree with [d]efendants that when viewing the contract as a whole, in a fair and common sense manner, a [fifty-four] month contract term was not the agreed upon intent of the parties; that it was [forty-eight] months; and that the court cannot torture the language of the contract to create an ambiguity, nor can the court rewrite a contract that is better than or different from the one the parties wrote themselves.

Plaintiff filed a motion for reconsideration, which was denied without prejudice on February 28, 2020. Plaintiff then filed a second motion for

6

reconsideration. The court denied plaintiff's motion and re-affirmed his original decision. This appeal followed.

On appeal, plaintiff raises the following arguments for our consideration:

POINT I

THE MOTION JUDGE ERRED BY FAILING TO GIVE EFFECT TO THE PLAIN LANGUAGE AND STRUCTURE OF THE EMPLOYMENT AGREEMENT, WHICH BY ITS TERMS PROVIDED FOR A MODIFIED AT[-]WILL EMPLOYMENT PERIOD TO BEGIN AFTER THE INITIAL TERM, WITH A SIX[-]MONTH NOTICE PROVISION THAT COULD ISSUE ONLY DURING THE AT-WILL PERIOD

POINT II

THE MOTION JUDGE ERRED BY FAILING TO CONSIDER THE IMPORT OF EXTRINSIC EVIDENCE SUBMITTED BY PLAINTIFF, WHICH SUPPORTS A FINDING THAT THE PARTIES NEGOTIATED A SEPARATE AT[-]WILL PERIOD, WITH A SIX[-]MONTH TERMINATION NOTICE THAT COULD NOT ISSUE UNTIL AFTER EXPIRATION OF THE INITIAL TERM; THEREFORE, PLAINTIFF WAS ENTITLED TO SUMMARY JUDGMENT; ALTERNATIVELY, THE COMPETING INTERPRETATIONS OF WHEN NOTICE MAY ISSUE UNDER THE AT[-]WILL CLAUSE CONSTITUTED A SUFFICIENT

AMBIGUITY     TO     PRECLUDE     SUMMARY
JUDGMENT[4]

We review a motion judge's grant of summary judgment de novo, applying the same standard as the motion judge. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016) (quoting R. 4:46-2(c)).

When construing contract terms, "unless the meaning is both unclear and dependent on conflicting testimony," its interpretation is a matter of law. Celanese Ltd. v. Essex Cnty. Improvement Auth., 404 N.J. Super. 514, 528 (App. Div. 2009) (quoting Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 92 (App. Div. 2001)).

Well-established rules of construction govern this court's review of contractual terms. "The polestar of contract construction is to discover the

---

[4] We conclude that plaintiff's argument that the agreement is ambiguous necessitating consideration of extrinsic evidence is without sufficient merit to warrant discussion a written opinion, R. 2:11-3(e)(1)(E), and affirm for the reasons set forth by Judge Wilson.

intention of the parties as revealed by the language used by them." Karl's Sales & Serv., Inc. v. Gimbel Bros., 249 N.J. Super. 487, 492 (App. Div. 1991). Courts "should not torture the language of [contracts] to create ambiguity." Nester v. O'Donnell, 301 N.J. Super. 198, 210 (App. Div. 1997) (quoting Stiefel v. Bayly, Martin & Fay, Inc., 242 N.J. Super. 643, 651 (App. Div. 1990)).

The focus of review is "the intention of the parties to the contract as revealed by the language used, taken as an entirety; and, in the quest for the intention, the situation of the parties, the attendant circumstances, and the objects they were thereby striving to attain. . . ." Lederman v. Prudential Life Ins. Co. of America, 385 N.J. Super. 324, 339 (App. Div. 2006) (citation omitted). Courts may not re-write a contract or grant a better deal than that for which the parties expressly bargained. See Solondz v. Kornmehl, 317 N.J. Super. 16, 21 (App. Div. 1998).

Indeed, reviewing courts must read the contract "as a whole in a fair and common sense manner." Hardy ex rel. Dowdell v. Abdul-Matin, 198 N.J. 95, 103 (2009). "[W]ords and phrases are not to be isolated but related to the context and the contractual scheme as a whole, and given the meaning that comports with the probable intent and purpose." Republic Bus. Credit Corp. v. Camhe-

<u>Marcille</u>, 381 N.J. Super. 563, 569 (App. Div. 2005) (quoting <u>Newark Publishers' Ass'n v. Newark Typographical Union</u>, 22 N.J. 419, 426 (1956)).

With these guiding principles in mind, we reject plaintiff's argument that the commencement of his at-will term was somehow hobbled by the separate contractual provision requiring defendant to provide six-months' notice of its intent to terminate him. Plaintiff and defendant agreed to a single initial forty-eight-month term of employment during which plaintiff could not be terminated without good cause. The contract stated unambiguously that after this initial term, plaintiff's employment would be at will. Accordingly, the contract permitted defendant to terminate plaintiff without cause on the first day of the at-will term.

Nothing in the notice provision prohibited defendant from providing the required notice before the initial term ended. As Judge Wilson found, to conclude the notice provision trumped the provision limiting the for-cause term to forty-eight months would contravene the plain language of the agreement. Defendant received both appropriate notice and the full benefit of the initial term of the employment. We conclude that Judge Wilson wisely refrained from re-writing the parties' agreement or giving plaintiff a better deal than that for which the parties expressly bargained. <u>See</u> <u>Solondz</u>, 317 N.J. Super. at 21.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-3630-19